

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **EDWIN PETER HEALEY** | § | Case No. 15-60471 |
| xxx-xx-9134 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| MICHAEL R. HEALEY, in his capacity | § | |
| as Executor of the Estate of Edwin N. | § | |
| "Bud" Healey, deceased | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 15-6022 |
| | § | |
| EDWIN PETER HEALEY | § | |
| | § | |
| Defendant | § | |

### MEMORANDUM OF DECISION REGARDING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[1]

This matter came before the Court upon a Motion for Summary Judgment filed by

the Plaintiff, Michael R. Healey, as the substituted Plaintiff in this proceeding through his

official capacity as the Executor of the Estate of Edwin N. "Bud" Healey, deceased.[2]  No

response in opposition was timely filed to the Motion by the Debtor-Defendant, Edwin

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] Mr. Bud Healey, the original plaintiff in this suit, passed away on March 19, 2018. Notwithstanding his passing, the ownership of the litigation claim by his decedent's estate, and the subsequent substitution of his executor as the plaintiff in this action, the Court will reference Bud Healey as the "Plaintiff" and Edwin Peter "Pete" Healey as the "Defendant" in this memorandum.

Peter Healey.

The Plaintiff's predecessor-in-interest filed his "Plaintiff's Original Complaint to Determine Dischargeability of Debt Under 11 U.S.C. § 523" on October 19, 2015, seeking to have the judgment debt owed by the Defendant declared nondischargeable under various subsections of 11 U.S.C. § 523(a), including a determination that the judgment debt owed by the Defendant is a debt for fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4) and a debt for a willful and malicious injury under 11 U.S.C. § 523(a)(6).  Upon due consideration of the pleadings, the proper summary judgment evidence which has been submitted, and the relevant legal authorities, the Court concludes that the Plaintiff has demonstrated that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law that the debt owed now to the decedent's estate of Edwin N. Healey by the Defendant arising from the final judgment issued by the 3rd Judicial District Court in and for Henderson County, Texas, is nondischargeable under § 523(a)(4).[3]  This memorandum of decision disposes of all issues before the Court.[4]

---

[3]  Accordingly, the Court need not reach the issues and arguments presented with respect to the alleged nondischargeability of this debt under § 523(a)(6).

[4]  This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

## Factual and Procedural Background[5]

On December 5, 2012, the Plaintiff, Edwin N. "Bud" Healey, appointed one of his sons, the Defendant, Edwin P. "Pete" Healey, as his attorney-in-fact through the execution of a Statutory Durable Power of Attorney.[6]  The Power of Attorney endowed the Defendant with a wide-ranging set of powers to control the financial transactions for the benefit of his father.

Over the next couple of years, the Plaintiff became convinced that the Defendant had engaged in a number of unauthorized financial transactions through the use of the Power of Attorney.  In an action initially filed in Tarrant County, the Plaintiff alleged that large amounts of his money had been misappropriated by the Defendant in order to pay personal debts and to make improvements on his own properties, all to the damage and detriment of his father.  In the pursuit of various state law claims, including breach of fiduciary duty and theft, arising from the alleged misappropriations, the action was subsequently transferred to the 3rd Judicial District Court of Henderson County, Texas (the "State Court Litigation"), under Cause No. 2014C-0638.

The State Court Litigation was tried to a jury in June 2015 and the jury issued

---

[5] The facts presented are those which stand uncontested or resolved by final judgment between the parties and enforced by the principles of issue preclusion.  They are presented only as a general factual background to the legal claims asserted in the case.  This section is not intended to resolve any disputed or contested facts.

[6] Ex. 7.

factual findings pursuant to the charge in favor of the Plaintiff.[7]  The jury findings, in

relevant part, are as follows:

## QUESTION NO. 1:

Do you find by a preponderance of the evidence that Pete Healey, in his role as Power of Attorney (sic), breached his fiduciary duty owed to Bud Healey by:  (i)  borrowing money without interest and not paying it back; (ii) transferring Bud Healey's funds to his own accounts; and/or (iii) negotiating checks payable to himself from Bud Healey's accounts?

Answer "Yes" or "No."        yes[8]

## QUESTION NO. 2

What sum of money would fairly and reasonably compensate Bud Healey, for his damages, if any, that resulted from Pete Healey's breach of fiduciary duty?

Answer in dollars and cents, if applicable:    $243,615.42[9]

## QUESTION NO 10:

Do you find from a preponderance of the evidence that Pete Healey unlawfully appropriated Bud Healey's property with the intent to deprive him of the property by:  (i) transferring Bud Healey's funds to his own accounts without repaying said funds; and/or (ii) negotiating checks payable to himself from Bud Healey's accounts without repaying said funds?

Answer "Yes" or "No."        yes[10]

---

[7]  Ex. 1.

[8]  *Id.* at 5.

[9]  *Id*. at 6.

[10]  *Id*. at 14.

*INSTRUCTIONS*:

. . .

You are further instructed that a person acts with intent with respect to the nature of his conduct or to a result of his conduct when it is the conscious objective or desire to engage in the conduct or cause the result.[11]

. . .

## QUESTION NO. 11

What do you find, by a preponderance of the evidence, was the fair market value, if any, of the property, which was unlawfully appropriated by Pete Healey?

Answer in dollars and cents, if applicable:   <u>$243,615.42</u>[12]

## QUESTION NO. 14

Do you find by clear and convincing evidence that the conduct found in response to Question No. 10 was committed intentionally and knowingly?

Answer "Yes" or "No."      <u>yes</u>

*INSTRUCTIONS*:

You are instructed that a person acts "intentionally," or with "intent," with respect to the nature of his conduct or to a result of his conduct when it is the conscious objective or desire to engage in the conduct or cause the result.

You are further instructed that a person acts "knowingly," or with "knowledge," with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  A person acts "knowingly," or with "knowledge," with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.[13]

---

[11] *Id*.

[12] *Id*. at 15.

[13] *Id*. at 18.

Based upon the jury findings in the State Court Litigation, the 3rd Judicial District Court issued a Final Judgment on June 30, 2015 (the "State Court Judgment").[14]  The State Court Judgment assessed damages against the Defendant in favor of the Plaintff, including actual damages of $243,615.42, $1,000 statutory damages under the Texas Theft Liability Act, exemplary damages of $50,000, over $100,000 in attorney's fees, and additional contingent attorney's fee awards in the event of appeal.[15]

Less than a month later, on July 23, 2015, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[16] The Plaintiff timely filed this adversary proceeding on October 19, 2015.  On November 16, 2015, this Court modified the automatic stay pursuant to the Defendant's unopposed stay motion which permitted the parties to continue in state court with post-trial motions and any subsequent appeal.[17] The Defendant appealed the State Court Judgment and, in order to allow the full appellate process to be completed, this Court abated this adversary proceeding on May 17, 2016.[18]

On July 12, 2017, the Texas Court of Appeals for the Twelfth District of Texas at Tyler issued an opinion which fully affirmed the State Court Judgment which had been

---

[14]  Ex. 2.

[15]  *Id.*

[16]  Case no. 15-60471, dkt. #1.

[17]  Case no. 15-60471, dkt. #33.

[18]  Dkt #16.

assessed against the Defendant.[19]  The Defendant filed a petition for review with the

Supreme Court of Texas on November 30, 2017, which was subsequently denied on

January 12, 2018.[20]  After a subsequent delay presumably related to the final illness and

death of the Plaintiff, the Plaintiff's Executor was substituted as the plaintiff in this case

and filed the present Motion for Summary Judgment with the Court on May 29, 2018,

seeking a determination of nondischargeability against the Defendant under 11 U.S.C.

§§ 523(a)(4) and (a)(6) through the application of the principles of collateral estoppel.[21]

The Court subsequently dissolved its abatement on July 12, 2018,[22] and the Court began

its consideration of the motion approximately 30 days after the entry of the abatement

dissolution order.[23]

*Summary Judgment Standards and Process*

The Plaintiff brings his Motion for Summary Judgment in this adversary

proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule

incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment

shall be rendered "if the movant shows that there is no genuine issue as to any material

---

[19] Ex. 3, also available as *Healey v. Healey,* 529 S.W.3d 124 (Tex.App. – Tyler 2017, pet. denied).

[20] Ex. 6.

[21] Dkt. #24.

[22] Dkt. #25.

[23] Dkt. #71.

fact and the movant is entitled to judgment as a matter of law."[24]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.[25]  As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[26]

The operation of the summary judgment standard depends upon which party will bear the burden of persuasion at trial.  "If the moving party bears the burden of persuasion at trial, it must also support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."[27]

If the motion is supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific

---

[24] Fed. R. Civ. P. 56(a).

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[26] Fed. R. Civ. P. 56(c).

[27] *Sell v. Universal Surveillance Sys., LLC*, 2017 WL 3712188, at *3 (W.D. Tex. July 6, 2017) (citing *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.[28]  "A fact is material only if its resolution would affect the outcome of the action . . . ."[29]  In so demonstrating, the non-movant must show more than a "mere disagreement" between the parties,[30] or that there is merely "some metaphysical doubt as to the material facts."[31]  Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine issue of material fact.[32]  However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[33]

The record presented is reviewed in the light most favorable to the non-moving party.[34]  "Where the record taken as a whole could not lead a rational trier of fact to find

---

[28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).

[29] *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[30] *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993).

[31] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[32] *McCarty v. Hillstone Rest. Group, Inc.*, 864 F.3d 354, 357 (5th Cir. 2017).

[33] *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).

[34] *Matsushita*, 475 U.S. at 587.

for the non-moving party, there is no 'genuine issue for trial.'"[35]  Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[36]  Essentially, if a non-movant fails to set forth specific facts that present a triable issue on any relevant issues, his claims should not survive summary judgment.[37]

In this case, the Plaintiff bears the ultimate burden as to the nondischargeability of the debt.  Thus, the Plaintiff is entitled to a summary judgment only if there exists no genuine issue of material fact as to each essential element under § 523(a)(4).  The motion for summary judgment under consideration herein seeks judgment as a matter of law through the application of collateral estoppel.  The Plaintiff claims that the facts as established during the state court litigation before the 3rd Judicial District Court in and for Henderson County, Texas, and as affirmed by the Texas Court of Appeals form the basis for a determination that the underlying judgment debt is nondischargeable in the Defendant's Chapter 7 bankruptcy case.  Resolving this question requires that the Court first determine the applicability of the doctrine itself.  If collateral estoppel applies, any relevant factual findings (i.e., related to the required elements for nondischargeability) regarding the actions of the Defendant in this common set of operative facts upon which the state court judgment is based should not be disturbed here.  The Court applies those

---

[35]  *Id.*

[36]  *Anderson,* 477 U.S. at 248.

[37]  *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 (5th Cir. 2001).

findings to the required elements for nondischargeability to ascertain which factual issues, if any, remain.   If collateral estoppel does not apply, the Plaintiff's motion must be wholly denied.

*Standards for Issue Preclusion (Collateral Estoppel).*

"Collateral Estoppel or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"[38] In other words, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."[39] "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."[40]

In the bankruptcy dischargeability context, "parties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability" and

---

[38]  *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations omitted).

[39]  *Montana v. U. S.*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).

[40]  *Id.* at 153-54.

satisfy the elements thereof.[41]   In other words, when an issue that forms the basis for the creditor's theory of nondischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds.[42]   While the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable.[43]

The inquiry into the preclusive effect of a state court judgment is guided by the full faith and credit statute, which states that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C. § 1738 (1994).  Thus, federal courts look to the principles of issue preclusion utilized by the forum state in which the prior judgment was entered.[44]   Because the judgment against the Defendants was entered in a Texas state court, this Court applies the Texas law of issue preclusion.[45]

Collateral estoppel under Texas law prevents the relitigation of identical issues of law or fact that were actually litigated and were essential to the final judgment in a prior

---

[41]   *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotation marks omitted).

[42]   *RecoverEdge, L.P. v. Pentecost,* 44 F.3d 1284, 1294 (5th Cir. 1995).

[43]   *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

[44]   *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

[45]   *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

suit.[46]  "The doctrine applies when the party against whom collateral estoppel is asserted

had a full and fair opportunity to litigate the issue in the prior suit."[47]  Specifically, a party

is collaterally estopped from raising an issue under Texas law when: (1) the facts sought

to be litigated in the second case were fully and fairly litigated in the first; (2) those facts

were essential to the prior judgment; and (3) the parties were cast as adversaries in the

first case.[48]  "Once an actually litigated and essential issue is determined, that issue is

conclusive in a subsequent action between the same parties."[49]

In the context of issue preclusion, "issue" and "fact" are interchangeable.  The

purpose of the reviewing court is to determine the specific facts brought that were already

established through full and fair litigation.  In this circuit, issue preclusion will prevent a

bankruptcy court from determining dischargeability issues for itself only if "the first court

has made specific, subordinate, factual findings on the identical dischargeability issue in

question  . . .  and the facts supporting the court's findings are discernible from that court's

record."[50]  As the party asserting the preclusive effect of the findings arising from the

state court litigation, the Plaintiff has the burden of proof on all elements of collateral

---

[46]  *Tex. Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).

[47]  *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991) (citing *Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W. 926, 927 (Tex. 1988)).

[48]  *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); *Terry v. Chicago Bridge & Iron Co.*, 283 F. Supp. 3d 601, ___, 2017 WL 6947925, at *3 (S.D. Tex. 2017).

[49]  *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

[50]  *Fielder v. King (Matter of King)*, 103 F.3d 17, 19 (5th Cir. 1997)(*citing Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 1081 (1995)).

estoppel.

Addressing the relevant factors in reverse order, the summary judgment record clearly demonstrates that these two parties were adversaries in the state court litigation. The summary judgment record further evidences that the factual determinations tendered in the state court litigation were essential to the entry of the State Court Judgment against the Defendant in that state court proceeding and a certain number of those are germane to the determination of the nondischargeable nature of that judgment debt under 11 U.S.C. § 523. The State Court Judgment, and the jury findings upon which it is based, establish several facts which undergird the liability of the Defendant to the Plaintiff for breach of fiduciary duty and other grounds. Such facts arose from a full evidentiary trial. As a result, the facts established in the state court litigation were fully and fairly litigated by the parties in the state court system. Thus, all three requirements for the application of collateral estoppel under Texas law are established in this case and all of the parties are thereby estopped from relitigating those determinations that necessarily support the State Court Judgment. However, notwithstanding the application of collateral estoppel principles, the Court must ascertain whether those established factual findings are sufficient to fulfill the elements of the dischargeability claims brought by the Plaintiff under 11 U.S.C. § 523(a)(4).

*Section 523(a)(4): Debt for Fraud or Defalcation While Acting in a Fiduciary Capacity*

11 U.S.C. § 523(a)(4) provides that "[a] discharge under 11 U.S.C.§ 727 does not discharge an individual from any debt — for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."  The Fifth Circuit has noted "that this discharge exception was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's."[51]  Whether the actions of an individual were taken in a fiduciary capacity for the purposes of § 523(a)(4) is determined by federal law.[52]  However, "state law is important in determining whether or not a trust obligation exists."[53]

The Fifth Circuit has discussed the concept of a fiduciary under § 523(a)(4) in the following terms:

> [T]he concept of fiduciary under § 523(a)(4) is narrower than it is under general common law.  Under § 523(a)(4), "fiduciary" is limited to instances involving express or technical trusts.  The purported trustee's duties must, therefore, arise independent of any contractual obligation.

---

[51]  *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598, 602 (5th Cir.1998), *cert. denied*, 526 U.S. 1016 (1999) (internal quotations omitted).

[52]  *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011).

[53]  *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004).

> The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong.  Constructive trusts or trusts *ex malificio* thus also fall short of the requirements of § 523(a)(4).
>
> . . . Statutory trusts, by contrast, can satisfy the dictates of § 523(a)(4).  It is not enough, however, that a statute purports to create a trust:  A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms "trust" or "fiduciary."  Rather, to meet the requirements of § 523(a)(4), a statutory trust must (1) include a definable res and (2) impose "trust-like" duties.[54]

However, the trust relationship must exist prior to the creation of, and without reference to, the indebtedness in question.[55]

The Fifth Circuit has recognized that the "technical" or "express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law.[56]  Federal courts in this context have "not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity,

---

[54] *Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998).

[55] *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338 (5th Cir. 1980).

[56] *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 393 (Bankr. E.D. Tex. 2009) (citing *LSP Inv. Partnership v. Bennett (In re Bennett)*, 898 F.2d 779, 784-85 (5th Cir.), *cert. denied*, 510 U.S. 1011 (1993)).

as understood by state law principles, are non-dischargeable."[57]

Under Texas law, "[A] power of attorney creates an agency relationship, which is a fiduciary relationship as a matter of law."[58] "Consequently, a fiduciary owes his principal a high duty of good faith, fair dealing, honest performance, and strict accountability."[59] As the Texas Court of Appeals emphatically stated in its opinion affirming the State Court Judgment, "[a] fiduciary may not use his position to self-deal."[60]

Although the recognition of a fiduciary relationship under Texas law does not, *ipso facto*, satisfy the fiduciary capacity requirement under § 523(a)(4), that requirement is fulfilled "where the duties and control exercised by the agent are tantamount to those of a trustee of an express trust."[61] Specifically, the Fifth Circuit has noted that "one such duty has loomed large — the duty that a trustee refrain from spending trust funds for non-trust purposes."[62] As for control, the Fifth Circuit has again directed that "the central focus of the inquiry under § 523(a)(4) [is] whether the alleged fiduciary exercises *actual control*

---

[57] *Shcolnik v. Rapid Settlements, Ltd. (In re Shcolnik)*, 670 F.3d 624, 628 (5th Cir. 2012) (citing *Gupta*, 394 F.3d at 350).

[58] *Estate of Danford*, 550 S.W.3d 275, 286 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Miller v. Lucas*, 2015 WL 2437887, at *4 (Tex. App.—Fort Worth May 21, 2015, pet. denied)).

[59] *In re Estate of Miller*, 446 S.W.3d 445, 454–55 (Tex. App.—Tyler 2014, no pet.) (citing *Sassen v. Tanglegrove Townhouse Condo. Ass'n*, 877 S.W.2d 489, 492 (Tex. App.—Texarkana 1994, writ denied).

[60] *Healey,* 529 S.W.3d at 135-36.

[61] *Pool v. Johnson*, 2002 WL 597447, at *4 (N.D. Tex. Apr. 15, 2002).

[62] *Tran,* 151 F.3d at 343-44.

over the alleged beneficiary's money or property. . . . [I]t is clear that the issue of control has always been the critical fact looked to by the courts in imposing this high level of responsibility."[63]

In the context of this case, the jury determined that, instead of performing his fiduciary duties with integrity and fidelity, the Defendant had not only engaged in self-dealing under the prescribed instruction,[64] but had exercised his duties to his own personal economic advantage with an actual intent of depriving the Plaintiff of his property.[65]  The Defendant's exercise of authority and control over funds obtained in his fiduciary capacity to the intentional detriment of his principal is thus sufficient to establish the necessary trust-type relationship required for nondischargeability purposes under § 523(a)(4).

As to the remaining element of nondischargeability under § 523(a)(4), there is a sufficient factual basis in the state court record to support a conclusion that the Defendant committed a defalcation while acting in his fiduciary capacity.  Under the recent decision of the United States Supreme Court in *Bullock v. BankChampaign, N.A.*, ___U.S.___, 133 S.Ct. 1754 (2013), in which it rejected an objective recklessness standard in favor of a heightened culpability standard for defalcation under § 523(a)(4),  the Supreme Court

---

[63]  *Id.* at 345 (emphasis added).

[64]  Ex. 1 at 5 ["Self-dealing occurs when the agent uses the advantage of his position to gain a benefit for the agent at the expense of the principal."].

[65]  *Id*. at 14.

declared that such defalcation "includes a culpable state of mind requirement" involving "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id*. at 1757.   According to *Bullock*, "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong." *Id*. at 1759.   Such an intentional wrong encompasses not only conduct which the fiduciary knows is improper, but it also encompasses reckless conduct,[66] such as when a fiduciary "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk" that his conduct will result in a breach of fiduciary duty. *Id*.

In this case, the jury found, on the basis of the evidence presented, that the Defendant had intentionally and knowingly appropriated the Plaintiff's property with an intention to deprive him of it.   In fact, it found that the Defendant possessed that requisite mental state in pursuing his misdeeds by the heightened standard of clear and convincing evidence.   When the Defendant engaged in his intentional failure to account and to deliver the funds received in trust to his principal and instead utilized them for his own purposes, he knew of the improper nature of his behavior and possessed a "culpable state of mind" with regard to his actions.   Indeed, the assessment of exemplary damages

---

[66]   The Supreme Court described such reckless conduct as "the kind set forth in the Model Penal Code §2.02(2)(c)" and tracks that necessary to prove scienter in federal securities cases.   Scienter, in the context of securities fraud, is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976).   *Bullock* therefore seeks to eliminate from the scope of § 523(a)(4) the type of recklessness arising as a consequence of mere negligence or inadvertence.

against the Defendant by the state court buttresses that conclusion.  Accordingly, as a result of the Defendant's actual knowledge of the improper nature of his conduct, the Plaintiff has established a *prima facie* case for the entry of a summary judgment that the actual damages evidenced by the State Court Judgment should be rendered nondischargeable under § 523(a)(4) as arising from a defalcation committed by the Defendant while acting in a fiduciary capacity.[67]

With regard to the recovery of exemplary damages, attorney's fees, interest, and associated costs, the United States Supreme Court has stated that "[o]nce it is established that specific money or property has been obtained by fraud, . . . 'any debt' arising therefrom is excepted from discharge." *Cohen v. de la Cruz,* 523 U.S. 213, 218 (1998); *see also Snook v. Popiel (In re Snook)*, 168 Fed. App'x. 577, 578 (5th Cir. 2006); *S&S Food Corp. v. Sherali (In re Sharali)*, 490 B.R. 104, 125 (Bankr. N.D. Tex. 2013). Though the facts in *Cohen* specifically addressed a liability rendered nondischargeable under the actual fraud prong of § 523(a)(2)(A), its rationale to prevent a discharge of all liability arising from circumstances that render a debt nondischargeable under § 523(a) has been extended to cases in which the primary debt is rendered nondischargeable due to fraud or defalcation while acting in a fiduciary capacity.  *Helvetia Asset Recovery, Inc. v. Kahn (In re Kahn)*, 533 B.R. 576, 587 (Bankr. W.D. Tex. 2015);  *Drexel Highlander Ltd. P'ship v. Edelman (In re Edelman)*, 2014 WL 1796217, at *43 (Bankr. N.D. Tex., May 6,

---

[67] This debt could likely be declared to be nondischargeable as a debt arising from an embezzlement under § 523(a)(4), but such cause of action was not asserted under the Plaintiff's complaint.

2014); *Conte v. Woomer (In re Woomer),* 2013 WL 5536072, at *18 (Bankr. E.D. Tex.,

Oct. 7, 2013).   Further, "the status of ancillary obligations such as attorney's fees and

interest depends on that of the primary debt.  When the primary debt is nondischargeable

. . . , the attorney's fees and interest accompanying compensatory damages, including

post-judgment interest, are likewise nondischargeable." *Gober v. Terra + Corp. (In re*

*Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996).  Thus, in light of the jurisprudence that

§ 523(a) should be properly construed to bar the discharge of all liability arising from the

categories of misconduct that render a debt nondischargeable, thereby insuring "that the

creditors' interest in recovering full payment of debts in these categories outweigh[s] the

debtors' interest in a complete fresh start," *Cohen*, 523 U.S. at 222, the Court concludes

that the Plaintiff has further established a *prima facie* case for the entry of a summary

judgment that the damages awarded to the Plaintiff in the State Court Judgment for

exemplary damages, interest, and attorneys' fees based upon the Defendant's misconduct

must also be rendered nondischargeable under § 523(a)(4).

Accordingly, the Plaintiff has made a *prima facie* showing that it is entitled to a

summary judgment against the Defendant that the debt evidenced by the State Court

Judgment should be declared nondischargeable pursuant to § 523(a)(4) of the Bankruptcy

Code.  The burden therefore shifts to the Defendant under Fed. R. Civ. P. 7056(e) to set

forth specific facts demonstrating that there is a genuine issue of material fact for trial or

that judgment should not otherwise be entered as a matter of law.[68]  As previously stated,

the Defendant did not respond to the motion for summary judgment in any way, thereby

failing to submit any summary judgment evidence that controverts any of the facts

established under the summary judgment evidence tendered by the Plaintiff.[69]

### Conclusion

Accordingly, upon due consideration of the pleadings, the proper summary

judgment evidence submitted by the Plaintiff, the relevant legal authorities and for the

reasons set forth herein, the Court concludes that there is no genuine issue as to any

material fact germane to a determination of dischargeability and that the Plaintiff,

Michael R. Healey, as the substituted Plaintiff in this proceeding through his official

---

[68]  Fed. R. Civ. P. 56(e), as incorporated into bankruptcy adversary proceedings by Fed. R. Bankr. P. 56, states, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

[69]  The Court's procedure in this context is governed by Local District Court Rule CV-56, which is incorporated into all bankruptcy adversary proceedings by LBR 7056(d).  Subsection (c) of that rule provides as follows:

> (c) In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by proper summary judgment evidence.  The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment.

capacity as the Executor of the Estate of Edwin N. "Bud" Healey, deceased, is entitled to summary judgment that the debt now owed to the decedent's estate by the Debtor-Defendant, Edwin Peter "Pete" Healey, arising from the State Court Judgment is non-dischargeable under the provisions of 11 U.S.C. § 523(a)(4).  The Court further concludes that the Plaintiff's recovery of $350.00 in court costs expended in the filing of the adversary complaint is also proper under 28 U.S.C. §1920.

An appropriate order and a judgment will be entered which is consistent with this opinion.

Signed on 10/02/2018

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE